LIBERTARIAN PARTY OF INDIANA, Stephen W. Dillon, New Alliance Party, and Mary Catherine Barton, Plaintiffs,

v.

MARION COUNTY BOARD OF VOTER REGISTRATION, Janet E. Richart, in her official capacity as a member of the Marion County Board of Voter Registration, Mary Agnes Bussing, in her official capacity as a member of the Marion County Board of Voter Registration, the State of Indiana, Indiana State Election Board, Evan Bayh, in his official capacity as a member of the Indiana State Election Board, Alan Mills, in his official capacity as a member of the Indiana State Election Board, Timothy Durham, in his official capacity as a member of the Indiana State Election Board, Robert L. Wright, in his official capacity as a member of the Indiana State Election Board, Defendants.

IP90–2240–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 11, 1991.

Stephen Laudig, Andrew C. Maternowski, Indianapolis, Ind., for plaintiffs.

Allen Pope, City Legal Dept., and Atty. Gen. of Indiana, Attention: Kim Forgey, Indianapolis, Ind., for defendants.

## ENTRY

BARKER, District Judge.

By this action, the plaintiffs seek to obtain possession of both paper and computer tape copies of a list containing the names and addresses of, as well as other data about, Marion County registered voters ("the Registration List"; the basis of which is provided for in IC 3–7–7–9). The Registration List is in the possession of the Marion County Board of Voter Registration ("Voter Registration Board"), whose members include defendant Janet E. Richart, a Republican appointed by the Marion County Republican Party Chairperson, and defendant Mary Agnes Bussing, a democrat appointed by the Marion County Democratic Party Chairperson.

The Voter Registration Board distributes a copy of the Registration List on computer tape to the chairpersons of the Marion County Republican and Democratic Parties pursuant to IC 3–7–7–10, which provides:

> Two (2) copies of the list required by section 9 of this chapter shall be furnished to the inspector of the precinct for use at the polls on election day, and one (1) copy of the list shall be furnished to each of the county chairmen of the major political parties of the county as soon as the lists are prepared. Additional copies of the registration lists shall be kept open to public inspection at the office of the circuit court clerk or board of registration as soon as they are completed.

The parties do not dispute that the designation "major political parties," as defined by IC 3–5–2–30, currently refers to the Democratic and Republican parties in Marion County.

Although the Registration List is made available for public inspection, the plaintiffs allege that it would require an enormous amount of time and money for them to hand copy the list for their use. Each plaintiff has allegedly requested a copy of the computer tape from the Voter Registration Board and was denied. The plaintiffs claim that this discrimination against non-major political parties violates the equal protection clause of the fourteenth amendment and hinders their ability to exercise their first amendment rights, preventing them from contacting registered voters for financial and electoral support.

The plaintiffs ask the court to declare that IC 3–7–7–10, both on its face and as applied, deprives them of equal protection of the law under the fourteenth amendment in violation of 42 U.S.C. § 1983, and that the defendants' activities violate the plaintiffs' first amendment rights. The

plaintiffs also ask the court to enjoin the Voter Registration Board from distributing the Registration List only to the major political parties, to order the Voter Registration Board to make the Registration List available to the plaintiffs on the same terms as it is provided to the major political parties, and to order the Voter Registration Board to provide the plaintiffs with a copy of the list in the same form as it has already been provided to the Democratic and Republican chairpersons. In addition, the plaintiffs ask this court to issue an injunction directing the Indiana State Election Board to forbid the Voter Registration Board from practicing such discrimination now and in the future and to order the Voter Registration Board to make a copy of the Registration List available to the plaintiffs.

The following motions are before the court: (1) a motion to stay, filed by the Marion County Board of Voter Registration, Janet E. Richart, Mary Agnes Bussing (collectively, "the County Defendants"), (2) a motion to dismiss filed by the state of Indiana, the Indiana State Election Board, Evan Bayh, Alan Mills, Timothy Durham, and Robert L. Wright (collectively, "the State Defendants"), (3) the plaintiffs' motion for summary judgment, (4) the County Defendants' alternative motion for summary judgment, (5) the plaintiffs' motion to strike or deny the County Defendants' alternative motion for summary judgment and a motion for sanctions, and (6) the plaintiffs' motion for a preliminary injunction.

### 1. The County Defendants' Motion to Stay

■ Relying on *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the County Defendants moved this court to abstain, arguing that the resolution of an unsettled question of state law regarding the interpretation of IC 5–14–3–3(c) might make it unnecessary to decide the federal constitutional issues presented by this case. IC 5–14–3–3(c), pertaining generally to access to public records, provides in part:

[A] public agency may or may not, in accordance with a nondiscriminatory uniform policy of the agency, permit a person to duplicate or obtain a duplicate copy of a computer tape, computer disc, microfilm, or other similar or analogous record system that contains information owned by or entrusted to the agency.

The County Defendants argue that a state court ruling that the implementation of "a nondiscriminatory uniform policy" requires the Voter Registration Board to provide Registration lists to non-major parties would obviate the need to reach the constitutional issues in this case.

This court is not convinced that such a state court ruling would provide all the relief sought by the complaint. The plaintiffs apparently want a paper copy of the Registration List as well as a computer copy, but IC 5–14–3–3(c) does not mention record systems maintained on paper.

■ Even if IC 5–14–3–3(c) provided for equal access to lists on paper as well as computer tape, a state court has apparently already construed this statute in such as way as to make it unlikely that this court could avoid reaching constitutional issues. It appears that the Shelby Circuit Court has already ruled against providing access to records (although what access was sought is not clear). Since a state court has construed IC 5–14–3–3(c), the reason for abstaining has vanished. This court need not wait for a ruling from the highest (or a higher) state court. *City of Houston v. Hill,* 482 U.S. 451, 469–470, 107 S.Ct. 2502, 2514, 96 L.Ed.2d 398 (1987). All things being equal, the fact that an appeal is pending might warrant abstention, but in this case an election is fast approaching, and if the plaintiffs are to be given an opportunity to assert their claims, time is of the essence.[1] "[I]n appropriate circumstances harms such as delay can outweigh

---

1. It should be noted that the plaintiffs did not file their response to the February 6, 1991 motion to stay until September 9, 1991. The plaintiffs had been engaged in settlement discussions with the State Defendants and had asked the court to withhold any ruling until August 29, 1991, at which point the plaintiffs withdrew their request.

the need for clarification and dictate that abstention be avoided." *Lister v. Lucey,* 575 F.2d 1325, 1333 (7th Cir.), *cert. denied,* 439 U.S. 865, 99 S.Ct. 190, 58 L.Ed.2d 175 (1978) (citations omitted); *see also Harman v. Forssenius,* 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965). In light of the upcoming elections in November and the court's concern that IC 5–14–3–3(c) could provide partial relief at best, abstention is inappropriate. The County Defendants' motion to abstain is denied.

### 2. The State Defendants' Motion to Dismiss

■ The State Defendants correctly maintain that suits against the state and the state election board as an agency of the state (which characterization the plaintiffs do not dispute) are barred by the eleventh amendment to the United States Constitution. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The plaintiffs argue that suits for prospective relief brought against state officials acting in their official capacities are not barred, but the State Defendants expressly did not make their eleventh amendment argument with respect to these individuals. The plaintiffs cite *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209, 227 (1986), in support of the proposition that the eleventh amendment does not bar relief designed to end an ongoing violation of federal law; however, this statement was made in the context of a discussion of suits against state officials only. Accordingly, the State Defendants' motion to dismiss is granted with respect to the state and the state election board.

■ As for the remaining individual state officials, the plaintiffs lack standing to bring suit against them. They have not alleged an injury "that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,*

454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The element of redressability is an Article III minimum for standing. *Id.*

The assertion that the state enacted IC 3–7–7–10 is irrelevant for purposes of determining whether a successful lawsuit will redress the plaintiffs' grievances. This is particularly true with respect to the remaining defendants, the individual officials. The plaintiffs offer no support for the argument that the state must be a party before the court can declare a statute facially invalid, and this argument does not support the plaintiffs' claims to standing against the individual defendants anyway. Likewise, the argument that the Indiana State Election Board could exercise its supervisory powers over the County Defendants is not decisive of the issue of whether the individuals named as defendants could redress the plaintiffs' grievances. Even if the individuals were properly named because of the supervisory duties of the board that they sit on, the plaintiffs do not refute the defendants' argument that this authority means little in light of the fact that the Indiana State Election Board can neither discipline nor remove members of the Voter Registration Board. Since the plaintiffs have not shown that any of their alleged injuries are likely to be redressed by the presence of the remaining State Defendants, and since it appears that the plaintiffs would be able to obtain all their requested relief from the County Defendants, the motion to dismiss is also granted with respect to the remaining State Defendants, Evan Bayh, Alan Mills, Timothy Durham, and Robert L. Wright.

### 3. The Motions for Summary Judgment

■ The County Defendants moved for summary judgment on the ground that the plaintiffs did not have standing to bring suit against them. They argue that "[t]he Plaintiffs complain about the alleged invidious discrimination of a statute whose provisions have not even been applied to them because they have never submitted to the Defendant a timely request to be treated the same as the major political parties un-

der that statute." Brief in Support of Alternative Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("County Defendants' Brief"), p. 5.

Whether the plaintiffs' standing to bring this action should turn on the fact that the plaintiffs did or did not make a request under IC 3–7–7–10 is unclear. There is no contention that the Libertarian and New Alliance parties are not bona fide political parties. Also undisputed is the fact that they are not "major political part[ies]" as defined by IC 3–5–2–30 and thus do not have an entitlement to Registration Lists under IC 3–7–7–10. The County Defendants cite *New York Civil Service Comm'n v. Snead*, 425 U.S. 457, 96 S.Ct. 1630, 48 L.Ed.2d 88 (1976), for the proposition that, having failed to make a timely demand, the plaintiffs do not have standing. However, the statute challenged in *Snead* had potential applicability to the plaintiff, as it was a portion of a civil service law governing certain leaves of absence, and the plaintiff was a civil service employee. *Id.*, 425 U.S. at 457, 96 S.Ct. at 1631. Here, by contrast, there is no entitlement to be found in IC 3–7–7–10 for the plaintiffs to acquire the desired list, not even a description of a procedure to be followed for making a request. Whether a request is required in such circumstances to meet the Article III injury requirement is not clear.

The court need not resolve this issue, however, as it is undisputed that demands were made by the plaintiffs; the defendants contention is that they were not timely.[2] As the plaintiffs point out, IC 3–7–7–10 contains a time frame for distributing Registration Lists but no deadline for requesting them. (Indeed, IC 3–7–7–10 contains no provision for requesting such lists at all.) The only timeliness requirement is thus one merely asserted by the plaintiffs. Even if there were such a deadline, the letters sent by the Voter Registration Board to the plaintiffs in response to their requests for copies of the Registration List (copies of which are attached as exhibits 3 and 4 to the plaintiffs' complaint and as exhibits B and D to the Affidavit of Mary Agnes Bussing) indicate that the requests were denied not for being untimely but rather because the plaintiffs were not major political parties. Moreover, the evidence presented by the County Defendants shows that Registration Lists were distributed to the chairpersons of the major political parties "[a]t various times during the calendar year 1990...." Affidavit of Mary Agnes Bussing, para. 10. The defendants' own evidence tends to contradict their contention that the lists were only available during a narrow time period.

Since the plaintiffs (or their agents) made requests for Registration Lists which were rejected, and since there was no timeliness requirement which they failed to satisfy, the plaintiffs have alleged a sufficiently concrete injury in light of Article III to have standing to maintain this action. The County Defendants' alternative motion for summary judgment is denied.

█ The plaintiffs' motion for summary judgment is directed to the issue of whether providing Registration Lists to major but not minor political parties violates the equal protection clause of the fourteenth amendment. The Supreme Court has determined the process that a court must follow in evaluating such a challenge to a portion of a state's election laws:

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plain-

---

**2.** The demand on behalf of the New Alliance Party, whose chairperson both in Marion County and on the state level is Barton, was apparently made by the party's attorney. The County Defendants have offered no authority to suggest that there is a material difference with respect to Article III standing analysis between a request from an agent and one from a principal.

tiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged state is unconstitutional.

*Anderson v. Celebreeze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) (citations omitted); *see also Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979).

Recognizing the complexity of election codes, the Supreme Court has ruled that "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1570 (footnote omitted); *see also Citizens for John W. Moore v. Board of Election Comm'rs*, 794 F.2d 1254, 1257 (7th Cir.), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 968 (1989). Perhaps a stricter standard of review should be used to judge the statute at issue here, as it is discriminatory in the sense that it favors the two largest political parties. *See Storer v. Brown*, 415 U.S. 724, 729, 94 S.Ct. 1274, 1278, 39 L.Ed.2d 714 (1974). The court need not resolve whether a stricter standard should be applied, however, because even under the standard applied in *Anderson*, the state's regulatory interests do not serve to justify the burdens it has imposed on the plaintiffs.

The plaintiffs in this case seek equal access to voters, meaning that significant advantages may not be accorded to two major political parties and arbitrarily denied to others. Restricting a political party's ability to reach voters impinges upon not only the members' freedom to associate as a party but also upon an individual voter's ability to assert her preferences. In the context of a case involving restrictions on access to the ballot, the Supreme Court ruled:

> The freedom to associate as a political party, a right we have recognized as fundamental, has diminished practical value if the party can be kept off the ballot. Access restrictions also implicate

the right to vote because absent recourse to referendums, "voters can assert their preferences only through candidates or parties or both." *Lubin v. Panish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974). By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences."

*Illinois State Bd. of Elections*, 440 U.S. at 184, 99 S.Ct. at 990. Like a restriction on access to the ballot, restrictions on the ability of some political parties to use Registration Lists impinges upon both the members' freedom to associate to express their views to the voters and the voters' ability to express preferences in light of the political views being advanced. Although the plaintiffs have access to the Registration List, their undisputed contention is that they would have to expend significant amounts of labor and money to have the list in a usable form, a burden not imposed on the major political parties.

In support of their position, the plaintiffs cite *Socialist Workers Party v. Rockefeller*, 314 F.Supp. 984 (S.D.N.Y.1970), *judgment aff'd*, 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970).[3] In *Socialist Workers Party*, the court examined provisions of a state statute that "provide[d] that lists of registered voters be delivered free of charge to the county chairmen of each political party polling at least 50,000 votes for governor in the last gubernatorial election." *Id.*, 314 F.Supp. at 995. The court ruled: "The State has shown no compelling state interest nor even a justifiable purpose for granting what, in effect, is a significant subsidy only to those parties which have the least need therefor." *Id.* (citation omitted). Likewise, the County Defendants have offered no important interest to justify the denial of the Registration Lists to the plaintiffs.

The County Defendants do not challenge the position that the interests asserted by the plaintiffs are fundamental and implicated by the statute and practices challenged. Rather, they suggest that giving the Regis-

---

**3.** "[S]ummary affirmances have considerably less precedential value than an opinion on the merits." *Illinois State Bd. of Elections*, 440 U.S. at 180, 99 S.Ct. at 988 (citation omitted).

tration Lists to the major political parties confers only incidental benefits on those parties. County Defendants' Brief, p. 4. In light of the importance of the interests asserted by the plaintiffs and Supreme Court precedent, the County Defendants' response does not in any way diminish the importance of the interests asserted by the plaintiffs.

As for the state's interests, the County Defendants argue:

> While the purposes of the legislature cannot be discerned from any particular individual section of the Indiana Code, a reading of the voters registration regulations taken as a whole makes clear the purposes which the legislature had in mind. On the one hand, the state legislature did not want to distribute voters registration lists to every person or organization who might request them; accordingly, certain access to the voters registration list was limited to political parties which had demonstrated a minimal amount of public support and interest in the election by having at least one candidate on the ballot of the election in question. See I.C. 3–7–7–2 and 3–7–7–3 [pertaining to distribution of memoranda of voter affidavits]. On the other hand, the state legislature sought to harness the self interest of the most powerful political parties in each county and use that self interest for the purpose of weeding out fraudulently registered voters.

County Defendants' Brief, pp. 2–3.

The desire to weed out fraudulently registered voters suggests that more political parties should have access to the Registration List rather than fewer. While the state has an interest in not being required to distribute Registration Lists to everyone who might request them, the County Defendants do not suggest how weighty that interest is or at what point it becomes so substantial as to warrant curtailing distribution. As noted above, the County Defendants also do not challenge that the Libertarian and New Alliance Parties are bona fide political parties.

Based on the County Defendants' assertions, all this court can do is speculate that at some point, the demands might become administratively or financially burdensome (although whether the Voter Registration Board charges for copies of the Registration List and what they cost to produce have not been revealed to the court). What is immediately clear, however, is that this interest is not sufficiently important in this case to justify the unnecessary impingement upon the first amendment and equal protection rights of the plaintiff political parties in this lawsuit that results from distributing the list to only two political parties.

As for the remedy which the court must shape to correct this violation, the Supreme Court has given the following guidance:

> [T]wo of the cardinal rules governing the federal courts [are]: " '[o]ne, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.' " *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960), quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885).

*Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 501–502, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985).

Since at some point the state may have an articulated, substantial interest in limiting distribution of the Registration Lists, this court cannot say that IC 3–7–7–10 could never be applied constitutionally to limit distribution. *See Illinois State Bd. of Elections,* 440 U.S. at 184–186, 99 S.Ct. at 990–991. All that can be said in this case is that with respect to the New Alliance and Libertarian Parties, no important state interest has been established which justifies a refusal to distribute copies of the Registration List to them in the same way that the lists are distributed to the major political parties. Thus, the court holds that IC 3–7–7–10, as it is applied to the plaintiffs,

deprives them of equal protection of the law.

**4. The Plaintiffs' Motion for Sanctions**

 The plaintiffs contend that the County Defendants' Alternative Motion for Summary Judgment violates the minimum standards for advocacy imposed by Fed. R.Civ.P. 11, and they. request that sanctions be imposed accordingly. Neither party's briefs on the summary judgment motions in this case fully satisfy this court's expectations of the lawyers who argue their cases before it, especially in light of the importance of the issues raised, but the County Defendants' submissions do not cross beyond the bounds of permissible and acceptable advocacy as governed by Rule 11. Accordingly, the plaintiffs' motion for sanctions is denied.

### CONCLUSION

The State Defendants' motion to dismiss is granted. The County Defendants' motion to stay and its alternative motion for summary judgment are denied. The plaintiffs' motion for sanctions is denied. The plaintiffs' motion for summary judgment with respect to the County Defendants is granted, thereby mooting the plaintiffs' motion for a preliminary injunction. In light of the court's ruling that IC 3-7-7-10, as applied by the Voter Registration Board to the plaintiffs in this case, violates the plaintiffs' equal protection rights, the County Defendants are hereby ordered to provide copies of Registration Lists to the plaintiff New Alliance and Libertarian Parties in the same forms and manners and on the same terms as such lists are distributed to major political parties, including any Registration Lists that have been distributed this year in connection with the upcoming November, 1991 election.

It is so ORDERED.