604 So.2d 477 (1992)
STATE of Florida, BY Robert A. BUTTERWORTH, etc., et al., Appellants,
v.
REPUBLICAN PARTY OF FLORIDA, et al., Appellees.
STATE of Florida, etc., et al., Appellants,
v.
NRA POLITICAL VICTORY FUND, et al., Appellees.
Nos. 79696, 79755.
Supreme Court of Florida.
August 27, 1992.
*478 Robert A. Butterworth, Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for appellants.
Richard C. McFarlain and Charles A. Stampelos of McFarlain, Wiley, Cassedy & Jones, Tallahassee, for appellees.
McDONALD, Justice.
These causes are before this Court because two circuit courts declared subsections 106.29(1)(b), 106.07(3)(b), and 106.04(4)(b)(2), Florida Statutes (1991), unconstitutional, and the district court certified that they need immediate resolution by this Court. Art. V, § 3(b)(5), Fla. Const. We affirm the trial courts' holding these statutes unconstitutional.
Subsection 106.29(1)(b) requires that "[e]ach state executive committee and county executive committee of each political party shall pay a 1.5 percent assessment on all contributions, excluding contributions *479 received from political committees and committees of continuous existence and excluding in-kind contributions and filing fees." Under subsections 106.04(4)(b)(2) and 106.07(3)(b), committees of continuing existence and political committees respectively are required to pay a 1.5 percent assessment on all contributions, excluding in-kind contributions. All assessments are transferred to the Election Campaign Financing Trust Fund[1] to be made available to qualifying candidates for governor or cabinet offices who agree to abide by the expenditure limits set forth in the statute.[2] §§ 106.33, .34, Fla. Stat. (1991).
The Republican Party of Florida and the National Rifle Association Political Victory Fund (NRA) brought separate suits alleging that the assessments impermissibly infringe on their First Amendment rights by devoting the assessed funds to causes or candidates they do not support and with whom they disagree. The trial courts agreed in both cases and enjoined the State from collecting or enforcing the assessment. The State appealed both cases, and we consolidated them.
While the State has the "broad power to regulate the time, place, and manner of elections [this power] `does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens.'" Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 222, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271 (1989) (quoting Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986)). It is well established that supporting a political candidate financially is speech and represents political expression at the core of the electoral process. State v. Dodd, 561 So.2d 263 (Fla. 1990) (citing Austin v. Michigan Chamber of Commerce, 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990). The fact that individuals "are compelled to make, rather than prohibited from making, contributions for political purposes works no less an infringement of their constitutional rights." Abood v. Detroit Board of Education, 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977); see Riley v. National Federation of Blind of N.C. Inc., 487 U.S. 781, 796-97, 108 S.Ct. 2667, 2677-78, 101 L.Ed.2d 669 (1988) (in the context of protected speech, there is no difference in the treatment of compelled speech and compelled silence); Carroll v. Blinken, 957 F.2d 991, 998 (2d Cir.) ("Abood and its progeny illustrate that there is linkage enough in being compelled to fund an unsupported cause."), petition for cert. filed, 60 U.S.L.W. 3816 (U.S. May 13, 1992) (No. 91-1831). Therefore, we conclude that the assessment is a substantial burden on the appellees' First Amendment rights.
The State asserts that the effect on First Amendment rights of the 1.5 percent assessment is de minimis and, thus, allowable. We disagree. The assessment results in the appellees supporting political candidates who may not espouse their views, and "the First Amendment `has its fullest and most urgent application' to speech uttered during a campaign for political office." Eu, 489 U.S. at 223, 109 S.Ct. at 1020 (quoting Monitor Patriot Co. v. Roy, 401 U.S. 265, 272, 91 S.Ct. 621, 625, 28 L.Ed.2d 35 (1971)). While the statutory percentage may be small, "we must be as vigilant against the modest diminution of speech as we are against its sweeping restriction. Where at all possible, government must curtail speech only to the degree necessary to meet the particular problem at hand." FEC v. Massachusetts Citizens for Life, Inc., 479 U.S. 238, 265, 107 S.Ct. 616, 631, 93 L.Ed.2d 539 (1986). Support from the trust fund is available on a content-neutral basis, but at least a portion of that money will be given to the appellees' adversaries, and in those cases the effect of the assessment will be to subsidize candidates with political positions differing from those of the appellees. Although *480 the infringement upon appellees' rights is not as substantial as it would be if the funds were allocated solely for partisan political purposes with which the appellees disagreed, even laws "restrict[ing] freedom of expression only incidentally ... must be narrowly drawn to avoid unnecessary intrusion on freedom of expression." Schad v. Borough of Mount Ephraim, 452 U.S. 61, 69 n. 7, 101 S.Ct. 2176, 2183 n. 7, 68 L.Ed.2d 671 (1981).
Because the assessment statutes burden rights of association and free speech, they may be upheld only if they serve a compelling governmental interest and are narrowly tailored to serve that interest. Eu, 489 U.S. at 222, 109 S.Ct. at 1019; FEC, 479 U.S. at 256, 107 S.Ct. at 627 ("When a statutory provision burdens First Amendment rights, it must be justified by a compelling state interest."). The State asserts that preserving the integrity of the election process by supporting candidates who are free from the influence of special interest money and, thus, removing corruption and the appearance of corruption from politics is a compelling interest.[3]
The legitimacy of this interest is not in question, Eu; Austin, but we "must consider the extent to which those interests make it necessary to burden the plaintiff's rights." Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983). When at all possible, governmental acts should affect speech only to the degree necessary to promote a compelling state interest. FEC. While publicly funding candidates advances the interest put forth by the State and does not abridge First Amendment values, Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), singling out political parties and associations to support the fund bears no relationship to the interest advanced.[4] There are equally effective means of supporting the trust fund without infringing on the appellees' constitutional rights, such as devoting a larger percentage of the filing fees to the fund or supporting the fund through general revenues. Therefore, we hold that the means chosen to advance the state interest in these cases is unduly burdensome and not tailored narrowly enough to withstand constitutional scrutiny.
The State asserts that the election laws must be looked at as a whole. Therefore, because the Republican Party's executive committee receives public funding, under sections 99.103 and 99.061(2), Florida Statutes (1991), that far exceeds the amount of the assessment, there is no impact on First Amendment rights.[5] The State concludes that condemning obtaining the funds through the 1.5 percent assessment levied on the contributions, rather than through deducting a like amount from the portion *481 of the filing fees it gives to political parties, elevates form over substance.
There are several problems with the State's contentions. The form of the assessment infringes on First Amendment rights by forcing contributors to decide between contributing to a party and financing causes or persons with whom they disagree or not contributing to a party at all. Thus, the assessment penalizes contributors for exercising their rights to contribute to and associate with a political party. Cf. Buckley, 424 U.S. at 25, 96 S.Ct. at 637 ("governmental `action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny'") (quoting NAACP v. Alabama, 357 U.S. 449, 460-61, 78 S.Ct. 1163, 1170-71, 2 L.Ed.2d 1488 (1958)). Moreover, that the net financial effect upon political parties and the fund is identical regardless of how the State comes to possess the money supports our conclusion that the state interest involved here can be achieved through less intrusive means. If the same goal may be achieved by two methods and one substantially burdens First Amendment rights and the other does not, the latter must be used.
For the reasons stated above, we hold that subsections 106.29(1)(b), 106.07(3)(b), and 106.04(4)(b)(2) are unconstitutional. Accordingly, the judgments of the trial courts are affirmed.
It is so ordered.
SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs with an opinion, in which KOGAN, J., concurs.
OVERTON, J., dissents with an opinion.
BARKETT, Chief Justice, concurring.
I agree completely with the majority. I write only to add a response to the State's argument that the benefit conferred on a political party through the filing fee revenue permits the State to impose a condition that restricts constitutional rights. In its Reply Brief, for example, the State argues:
When the campaign financing statutes are read in their totality, it is simply apparent that there is a string on the State money and the State may pull that string and take back a small portion of what it has given. This does not impair the First Amendment rights of the Party or its contributors.
Reply Brief of Appellants at 4.
While the State may have complete discretion in granting or denying a benefit such as the revenue from filing fees, the State may not condition that benefit in such a way as to induce the waiver of constitutional rights. See, e.g., Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); see generally Richard A. Epstein, The Supreme Court, 1987 Term  Foreword: Unconstitutional Conditions, State Power, and the Limits of Consent, 102 Harv.L.Rev. 4 (1988) (discussing the unconstitutional conditions doctrine).
Neither the U.S. Constitution nor the Florida Constitution permits the State to put "strings" on state benefits when fundamental rights are affected.
KOGAN, J., concurs.
OVERTON, Justice, dissenting.
I dissent. Broadening the use of the First Amendment should not, in my view, be a violation of the First Amendment. The majority opinion will effectively eliminate a major method of providing public financing for political campaigns. In determining the constitutionality of a statute, this Court has an obligation to examine the intent of the statutory scheme established by the legislature and to uphold that scheme if constitutionally permissible. Here, the legislature clearly intended to expand the use of the First Amendment by broadening public participation in the election process. I conclude that this statutory scheme, including the 1.5% assessment, is not a substantial burden on appellees' First Amendment rights.
As acknowledged in the majority opinion, the public funding of candidates advances an interest of the state and does not abridge First Amendment values when the established fund is distributed on a content-neutral basis. Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).
*482 With regard to political action committees, I find that the legislative intent is to preserve the election process's integrity by supporting candidates who are free from the influence of special interests' money. Removing corruption and the appearance of corruption from politics is a compelling state interest. Given the limited amount of the assessment and the content-neutral based scheme of distributing the funds to candidates without regard to the ideas they express, I find the statutes to be sufficiently narrowly drawn. I do not agree that "the assessment infringes on First Amendment rights by forcing contributors to decide between contributing to a party and financing causes or persons with whom they disagree or not contributing to a party at all." Op. at 481. Because the net financial effect is identical, no infringement exists under which contributors are penalized. The majority does in fact elevate "form over substance."
While strict scrutiny and the compelling state interest test may apply to political action committees, I find that the state needs to establish only a rational basis test as to the assessment against political parties. As acknowledged in the majority opinion, the Republican Party, under sections 99.103 and 99.061(2), Florida Statutes (1991), receives public funding that far exceeds the amount of the assessment. Given that the party is already receiving these funds from a portion of the filing fees, the amount of the assessment for public financing of all candidates is de minimis. This assessment for the public financing of campaigns is, in my view, a justifiable public purpose under the rational basis test. If this assessment is not a proper public purpose, then I suggest that the state cannot distribute state funds to the designated political parties.
I find the fund established by the subject legislation to be constitutional and, accordingly, would reverse the decisions of the trial court.
NOTES
[1] The Florida Election Campaign Financing Act created this fund. §§ 106.30-.36, Fla. Stat. (1991).
[2] The trust fund is also supported by a portion of the filing fees paid by candidates. § 99.092, Fla. Stat. (1991).
[3] Section 106.31, Florida Statutes (1991), states the intent and purpose of the Florida Election Campaign Financing Act:

The Legislature finds that the costs of running an effective campaign for statewide office have reached a level which tends to discourage persons from becoming candidates and to limit the persons who run for such office to those who are independently wealthy, who are supported by political committees representing special interests which are able to generate substantial campaign contributions, or who must appeal to special interest groups for campaign contributions. The Legislature further finds that campaign contributions generated by such political committees are having a disproportionate impact vis-a-vis contributions from unaffiliated individuals, which leads to the misperception of government officials unduly influenced by those special interests to the detriment of the public interest. The Legislature intends ss. 106.30-106.36 to alleviate these factors, dispel the misperception, and encourage qualified persons to seek statewide elective office who would not, or could not, otherwise do so.
[4] As a general rule, fees may not be charged for the privilege of exercising First Amendment rights, except to the extent the amounts collected go toward the administrative costs of regulating the First Amendment activity and only then if reasonable. Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); Fernandes v. Limmer, 663 F.2d 619 (5th Cir.1981), cert. dismissed, 458 U.S. 1124, 103 S.Ct. 5, 73 L.Ed.2d 1395 (1982); Bayside Enterprises, Inc. v. Carson, 450 F. Supp. 696 (M.D.Fla. 1978). Clearly, the assessments in this case do not go toward administrative costs, but are placed in the fund to support political candidates.
[5] Neither political committees nor committees of continuous existence receive any state funding. Therefore, this argument is only relevant to the assessment against political parties under subsection 106.29(1)(b).