642 So.2d 1 (1994)
Craig BOUDREAU, Appellant,
v.
Jackie WINCHESTER, as Supervisor of Elections for Palm Beach County, Florida; Jim Smith, As Secretary of State of Florida; Dorothy Joyce, As Director of the Division of Elections; The Republican Party; and the Democratic Party, Appellees.
No. 93-1123.
District Court of Appeal of Florida, Fourth District.
June 8, 1994.
Rehearing and Rehearing Denied September 28, 1994.
Donnie Murrell, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., George L. Waas, Asst. Atty. Gen., Tallahassee, and Joan Fowler, Asst. Atty. Gen., West Palm Beach, for appellees  Jim Smith and Dorothy Joyce.
Denise M. Dytrych, Asst. County Atty., West Palm Beach, for appellee  Jackie Winchester.
Rehearing and Rehearing En Banc Denied September 28, 1994.
PER CURIAM.
Appellant Boudreau sought office in a Republican party primary election. He objected to paying the statutory qualifying fee, consisting of a filing fee and an election assessment, and the party assessment, which section 99.061(1), Florida Statutes (1993), requires candidates to pay to the state upon qualifying.
Pursuant to section 99.092, Florida Statutes, one seeking nomination to office, other than as a write-in candidate or under section 99.095 (providing an alternative method of qualifying by petitioning process), must pay fees which total 7 1/2% of the annual salary of the office, broken down as follows:
(1) a qualifying fee, which consists of
(a) a filing fee, equal to 4.5 percent of the annual salary of the office. Of this, one-third goes to the election campaign financing trust fund, a portion of the balance goes to the state's general revenue fund and the remainder *2 is allocated to the state executive committee of the applicant's political party; and
(b) an election assessment, equal to 1 percent of the annual salary, which is deposited into the elections commission trust fund, and
(2) a party assessment equal to 2 percent of the annual salary, remitted by the department to the appropriate state executive committee.
See §§ 99.092(1) and 99.103(1) and (2), Fla. Stat. (1993).
Boudreau filed suit to challenge the constitutionality of the foregoing fees, to the extent portions were to be remitted to the Republican party executive committee and to the trust fund. The trial court granted Defendants' motions for summary judgment, denied Boudreau's, and entered judgment in favor of all Defendants. We affirm.
The election campaign financing trust fund (trust fund) was created to encourage persons to seek statewide elective office.
Boudreau argues that the designation of a portion of the filing fee to be placed in the trust fund is a forced contribution requiring him to support candidates of an opposing political party. The trial court found that the statutory fees did not compel contribution because a candidate may choose to run as an independent or may avoid the filing fee by choosing an alternative means of ballot access. See generally Buckley v. Valeo, 424 U.S. 1, 91-92, 96 S.Ct. 612, 669, 46 L.Ed.2d 659 (1976), in which a provision allowing taxpayers to choose to donate one dollar to an election campaign fund was upheld.
Certain statements in a recent Florida Supreme Court case are controlling. In State by Butterworth v. Republican Party of Florida, 604 So.2d 477 (Fla. 1992), legislation imposing a 1.5% assessment on contributions received by political parties allocated to the trust fund was held unconstitutional. There, the court determined that though the state has a legitimate interest in preserving the integrity of the election process, the means chosen to advance that interest, by singling out political parties, is unconstitutional as unduly burdensome.
Boudreau asserts that "[i]t is inconceivable" that the same reasoning would not be applied to assessing political candidates. However, that is precisely what the court's opinion in Republican Party implies; the supreme court stated that one reason why assessing political parties is unconstitutional is that there are other means of raising money for the trust fund, "such as devoting a larger percentage of the filing fees to the fund." 604 So.2d at 480 (emphasis added).
The instant statutory scheme is essentially no different from the payment of filing fees to the state, and an appropriation of a like sum to the trust fund. To the extent such funding is just like any other appropriation, Buckley applies.
Filing fees have also been held to be a constitutionally permissible means of regulating access to the ballot, Bullock v. Carter, 405 U.S. 134, 144-45, 92 S.Ct. 849, 856-57, 31 L.Ed.2d 92 (1972); Adams v. Askew, 511 F.2d 700, 702-03 (5th Cir.1975), so long as there is an alternative means of ballot access.
Although the Florida Supreme Court was not called upon to determine the constitutionality of the use of candidates' filing fees to fund the trust fund in Republican Party, the language in that case makes it clear that the court was not contemplating that such a funding method would also be an unconstitutional violation of first amendment rights.
Boudreau also argues that statutes requiring a candidate to pay his party the two percent party assessment infringe on his freedom of association, because they call for a greater degree of participation in the state party than the candidate may choose.
The payment of filing fees to the party's executive committee, for the purpose of encouraging and strengthening the party, was upheld in Wetherington v. Adams, 309 F. Supp. 318, 321 (N.D.Fla. 1970). We recognize that Republican Party advanced as a reason for finding unconstitutional the funding of the trust fund from contributions to political parties the general rule that fees may not be charged for the privilege of exercising first amendment rights except to the extent used for regulating the activity. 604 So.2d at 480, n. 4. However, that principle is *3 not at issue with the obvious purpose of this statute, to regulate ballot access. It is significant that the Florida statutory scheme does provide alternative means of becoming a candidate without paying the party assessment or the filing fee.
The district court in Wetherington underscored the state's interest in fostering political parties' activity as a basis for upholding filing fees, and the United States Supreme Court has also recognized the state's interest in guarding against splintered parties and factionalism and in avoiding chaotic elections. See also Burdick v. Takushi, ___ U.S. ___, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (prohibition on write-in voting does not unreasonably infringe on citizen's first amendment rights).
Therefore, the judgment is affirmed.
DELL, C.J., and HERSEY and STONE, JJ., concur.