PER CURIAM.
Connor, a qualified candidate for governor in the 1994 election cycle, seeks review of an order of the Florida Elections Commission denying him eligibility to receive distribution of $89,641.94 in matching funds under the Florida Elections Campaign Financing Act. §§ 106.30-106.36, Fla.Stat. (1993). Pursuant to Connor’s motion, this court ordered expedited briefing, and after hearing oral argument, issued an order on August 31, 1994, setting aside the order of the Florida Elections Commission, and remanding this case to the Commission for further action under a correct interpretation of the law. This opinion explains our decision as to the correct construction to be given to the matching fund provision of Florida’s campaign financing law.
To be eligible for campaign financing, section 106.33, Florida Statutes (1993), requires that a candidate for governor raise $150,000 in contributions. This amount excludes loans or contributions from the candidate’s personal funds and contributions from political parties. If the candidate meets this eligibility requirement, section 106.35(2)(a), Florida Statutes (1993), provides that he or she is entitled to matching funds, “[f]or qualifying matching contributions making up all or any portion of the threshold amounts specified in section 106.33(2), ... on a two-to-one basis,” and for all other qualifying matching contributions (QMCs) on a one-to-one basis. Under this section, QMCs are defined more restrictively than the contributions eligible for inclusion in the threshold amount under section 106.33, and include only contributions of $250 or less from an individual made after September 1 of the calendar year prior to the election.
Although Connor received QMCs in excess of $150,000, the Division of Elections determined that he was entitled to receive 2:1 matching funds only for those QMCs included in the first $150,000 raised by his campaign. Connor appealed this determination to the Florida Elections Commission, arguing that section 106.35(2)(a)(l) allowed him to receive 2:1 matching funds on all QMCs in an amount up to $150,000, and not merely on QMCs included in the first $150,000 collected. In a 3-2 vote, the Commission denied Con-nor’s appeal, and this expedited appeal followed.
*77 The division argues to us that only QMCs included in the initial $150,000 collected, which amount is required to establish entitlement to public campaign financing, are eligible for 2:1 matching. The division takes the correct position that non-QMC funds included within the qualifying threshold are not entitled to matching, but then erroneously interprets the campaign financing law to also mean that those non-QMC funds are counted against the maximum amount for which a candidate may request 2:1 matching funds. The division has not identified any provision of either the campaign financing law or its implementing rides that compels this result. We interpret the words “all or any portion of the threshold amount” contained in section 106.35(2)(a) to permit 2:1 matching funds against an amount less than $150,000 if a candidate has not obtained $150,000 in QMC funds. However, neither the plain meaning of the statute nor the legislative intent supports the division’s interpretation that the words “or any portion” constitute a limitation permitting 2:1 matching funds only for that part of the first $150,000 received which constitutes QMC funds. When, as here, a candidate receives $150,000 in QMC funding he or she is entitled to 2:1 matching funds for that entire amount.
The intent of Florida’s Election Campaign Financing Act, as set forth in section 106.31, Florida Statutes (1993), is to encourage the candidacy of otherwise qualified persons who are not independently wealthy and who do not have ready access to large-scale contributors and to minimize the impact of contributions from political committees representing special interests. The purpose of the Act is to preserve the integrity of the election process by supporting candidates who are free from the influence of special interest money and to remove corruption and the appearance of corruption from that process. State v. Republican Party of Florida, 604 So.2d 477 (Fla.1992). It has long been recognized that a remedial statute such as this should be liberally construed so as to suppress the evil identified by the legislature, and to advance the remedy intended. Amos v. Conkling, 99 Fla. 206, 126 So. 283 (1930).
However, the division’s interpretation, as affirmed by the elections commission in the order under review, does not liberally construe the Act so as to advance the remedy intended by the legislature. Instead, the division’s interpretation fosters a scenario in which candidates are encouraged, for no apparent purpose, to manipulate the timing, source, and amount of contributions so as to maximize the amount of matching funds available. We cannot agree that in adopting the Act, the legislature intended merely to supplant the evil of disproportionate special interest influence with a type of tactical gamesmanship that operates to penalize candidates who, lacking the wealth and political connections of their competitors, are required to initiate fund raising at an earlier date. Indeed, such a result disadvantages the very candidates intended to be supported by the Act.
We acknowledge that a reviewing court owes deference to an agency’s interpretation of a law it is charged with administering, so long as that interpretation is consistent with the legislative intent underlying the law. Public Employees Relations Commission v. Dade County Police Benevolent Association, 467 So.2d 987 (Fla.1985). We conclude, however, that the interpretation advanced by the Division of Elections and accepted by the Florida Elections Commission is neither supported by the language of the Act, nor does it advance any legitimate purpose intended by the legislature. We therefore agree with Connor that having raised $150,000 in qualifying matching contributions, he is entitled to the distribution of $300,000 in 2:1 matching funds, pursuant to section 106.35(2)(a)(l). The order of the Florida Elections Commission denying eligibility to receive distribution of matching funds is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
ZEHMER, C.J., and ALLEN and DAVIS, JJ., concur.